UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PARADIGM CONTRACT MANAGEMENT CO., INC.

Plaintiff,

v.

ST. PAUL FIRE AND MARINE INS. CO., U.S. FIDELITY AND GUARANTY CO., and METCALF & EDDY, INC.

Defendants.

No. 3:10cv211 (MRK)

**MEMORANDUM OF DECISION**

Plaintiff Paradigm Management Co., Inc. ("Paradigm"), a subcontractor, brings two claims. It first alleges that Defendant St. Paul Fire & Marine Ins. Co. ("St. Paul") (formerly U.S. Fidelity & Guaranty Co. ("USF&G")), a bond insurer, breached a contract that would have allowed Paradigm to recover money pursuant to Connecticut General Statutes § 49-42. Second, Paradigm alleges that Defendant Metcalf & Eddy, Inc. ("M&E"), a general contractor, was unjustly enriched when it reached a settlement with the City of Danbury for the completion of a project in which Paradigm participated.[1] For the reasons that follow, both of these claims fail. Accordingly, Defendants' Motion for Summary Judgment [doc. # 40] is GRANTED.

I.

The facts set forth herein are culled from the parties' Local Rule 56(a) Statements, affidavits, and exhibits. Because this case is currently at the summary judgment stage, the Court

[1] As USF&G is a wholly owned subsidiary of St. Paul, the two companies' names are used interchangeably. St. Paul, USF&G, and M&E collectively are referred to as "Defendants."

presents the facts in the light most favorable to Paradigm, the nonmoving party. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). Unless otherwise indicated, all of the facts recited below are undisputed.

This action arises out of a 1997-98 construction project ("the Project") to close the municipal landfill for the City of Danbury (the "City"). By agreement dated March 21, 1997, the City and M&E executed a contract for the Project (the "City-M&E Contract"). M&E was to design and act as general contractor for the purposes of, among other things, capping the landfill (the "Landfill Cap"). By agreement dated March 21, 1997, M&E subcontracted the entire scope of the construction of the Landfill Cap, among other tasks, to Poole & Kent New England, Inc. ("P&K") (the "M&E-P&K Subcontract").

On April 1, 1997, M&E secured Labor and Material Payment Bond No. 53-01823-97-5 ("the Bond") from USF&G. The Bond identifies M&E as the Principal, USF&G as the Surety, and the City as the Obligee. Under the terms of the Bond, M&E and USF&G pledged to make payments promptly to all claimants furnishing labor and materials to the project. A "claimant" is defined in the Bond as "one having a direct contract with the Principal, or with a sub-contractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract." Def.'s Local Rule 56(a) Statement [doc. # 41-13] Ex. 3-A (Bond). Neither party disputes that Paradigm qualifies as a "claimant" under this definition.

By agreement dated June 10, 1997 (the P&K-Paradigm Subcontract"), P&K subcontracted the construction of the Landfill Cap to Paradigm. Of the $6,282,930.00 total bill, Paradigm allocated $5,847,930.00 for work and $435,000 for an administrative fee.

By agreement dated July 14, 1997, Paradigm entered into a contract with J.F. Barrett & Sons, Inc. ("Barrett") (the "Paradigm-Barrett Subcontract"). This contract appears to be substantially similar to the P&K-Paradigm Subcontract. *See* Def.'s Local Rule 56(a) Statement [doc. # 41-6] Ex. D. Paradigm denies that the scope of work of the two was actually identical; it claims that it administered the construction of the Landfill Cap and subcontracted the remaining work (presumably, all construction work) to Barrett. *See* Pl.'s Local Rule 56(a) Statement [doc. # 45] at 2 ¶ 9; Pl.'s Local Rule 56(a) Statement [doc. # 45-1] Ex. 1 ¶¶ 12-13, 15-16.

The construction of the Landfill Cap was fraught with complications, which caused substantial cost overruns. Barrett went into Chapter 7 bankruptcy in 1997. The P&K-Paradigm Subcontract was approximately 90% complete before the January 1998 stoppage, and although Paradigm did not conduct substantial work after the stoppage, Paradigm allegedly concluded its work under the P&K-Paradigm Subcontract on September 23, 1998. The P&K-Paradigm Subcontract was terminated in October 1998, and P&K completed the Project.

On August 10, 1998, Paradigm gave USF&G notice of its claim for payment of monies owed under the P&K-Paradigm Subcontract. All payments that Paradigm received for work performed pursuant to the P&K-Paradigm Subcontract were paid by P&K. According to P&K, Paradigm was entitled to $5,380,455.50 but, for reasons not relevant here, was paid $6,239,094.26. Pl.'s Local Rule 56(a) Statement [doc. # 45-6] Ex. 6 at 2-3.

On June 22, 1999, less than one year from when Paradigm allegedly completed its work, Paradigm filed a lawsuit against USF&G seeking payment on the Bond ("*Paradigm I*"). In April 2002, USF&G approached Paradigm, indicated that they were unprepared for trial, and suggested that the parties enter into a tolling agreement whereby the suit would be withdrawn

and refiled within one year without prejudice and preserving their respective rights. The parties agreed that it was in their mutual best interest to postpone the litigation.

USF&G drafted a Tolling Agreement. After both parties signed the Tolling Agreement on April 19, 2002, Paradigm withdrew *Paradigm I*. At that time, USF&G had not made any claim that *Paradigm I* was barred by the one year jurisdictional statute of limitations in Connecticut General Statutes § 49-42(b), a subset of Connecticut's Little Miller Act, which provides in relevant part:

> Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the judicial district where the contract was to be performed . . . but *no such suit may be commenced after the expiration of one year after the last date that materials were supplied or any work was performed by the claimant* . . . .

Conn. Gen. Stat. § 49-42(b) (emphasis added).

On February 11, 2003, approximately eleven months after the Tolling Agreement was signed and over one year from when Paradigm allegedly completed its work on the Project, Paradigm filed a new complaint against USF&G. *See Paradigm Contract Mgmt. Co. v. U.S. Fid. & Guar. Co.*, No. X08CV034001935S, 2008 WL 1914290 (Conn. Super. Ct. Apr. 10, 2008) [hereinafter *Paradigm II*]. Paradigm alleged that it was entitled to $3,616,250.00 for work under the P&K-Paradigm Subcontract and that it was entitled to reasonable attorney fees pursuant to Connecticut General Statutes § 49-42(b).

On March 2, 2006, USF&G filed a motion to dismiss, arguing that Connecticut General Statutes § 49-42(b)'s one year jurisdictional requirement cannot be waived. Paradigm maintains that this was a breach of the Tolling Agreement. Pl.'s Local Rule 56(a) Statement [doc. # 45] at 12-13 ¶ 34. On July 10, 2006, USF&G's motion to dismiss was denied. The judge reasoned that the Tolling Agreement permissibly provided a benefit to Paradigm greater than that required by

the Little Miller Act and that Paradigm could bring an independent suit on the Bond, which contained a one-year limitation on suit that could be—and had been—waived.

On May 8, 2007, USF&G filed its Second Amended Answer, Affirmative Defenses and Counterclaim. Noting that Paradigm had provided no documentation in support of its claim for damages, USF&G alleged that Paradigm did not perform labor or supply materials used in the Project such that it could bring a suit under the Little Miller Act. USF&G also argued that Paradigm's action was time-barred. Paradigm maintains that it did provide the labor and materials for which it sought payment, *see* Pl.'s Local Rule 56(a) Statement [doc. # 45] at 3 ¶ 16, and that USF&G's argument regarding the jurisdictional bar constituted a second breach of the Tolling Agreement, *id.* at 15 ¶ 38.

On March 17, 2008, Paradigm moved to dismiss USF&G's counterclaim, alleging that because Connecticut General Statutes § 49-42(b) includes a time limitation, which is a jurisdictional bar that cannot be waived, the Superior Court did not have subject matter jurisdiction over USF&G's counterclaim under the Little Miller Act. Paradigm characterized its original claim as a common law action on the Bond, independent from the Little Miller Act.

On March 28, 2008, USF&G filed a second motion to dismiss**,** arguing that Paradigm's claims were all under the Little Miller Act and were barred by Connecticut General Statutes § 49-42(b). Paradigm terms this the third breach of the Tolling Agreement. *Id.* at 15 ¶ 39.

On April 10, 2008, the Superior Court found that (1) the Bond was executed pursuant to and therefore incorporated the Little Miller Act; (2) the Tolling Agreement was an impermissible expansion of coverage; and (3) Paradigm could not bring a common-law cause of action which was independent from the Little Miller Act. The Superior Court dismissed USF&G's counterclaim as moot. *Paradigm II*, 2008 WL 1914290. The Supreme Court of Connecticut

affirmed the Superior Court's decision. *Paradigm Contract Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.*, 293 Conn. 569 (2009) [hereinafter *Paradigm* Supreme].

Running concurrently to *Paradigm II* was a suit M&E filed against the City in December 2005 to recover damages for the cost overruns on the Project, including those relating to the construction of the Landfill Cap. Paradigm maintains that these cost overruns relate to labor and materials that Paradigm furnished. *See* Pl.'s Local Rule 56(a) Statement [doc. # 45] at 9 ¶¶ 16-18. On November 16, 2009, the City and M&E settled for $1.8 million ("M&E-City Settlement").

Paradigm filed a complaint on January 7, 2010 in the Connecticut Superior Court against Defendants and the City, in which it alleged that it suffered damages in excess of $600,000 due to USF&G's breach of contract and damages in excess of $600,000 due to M&E's unjust enrichment. Paradigm's third claim against the City to garnish or convert the City's settlement payment to M&E was dropped when the City was later removed as a defendant. Defendants filed a Notice of Removal [doc. # 1] on February 8, 2010 to bring the case before this Court. This opinion is in response to Defendants' Motion for Summary Judgment [doc. # 40], which was fully briefed by the parties. *See* Pl.'s Mem. in Opp'n [doc. # 44], Defs.' Reply [doc. # 46].

II.

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson*, 477

U.S. at 248. A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *DeFabio*, 623 F.3d at 74. However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead it "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n. 11 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

III.

The first question before the Court is whether USF&G breached the Tolling Agreement by raising Connecticut General Statutes § 49-42(b)'s jurisdictional limitation in *Paradigm II*. When analyzing a contract under Connecticut law, this Court must look at the contract as a whole and give operative effect to all of its provisions. *See Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 89 (2009). The Court's analysis must focus on the intention of the parties, as discerned from the language they employed. *See Levine v. Advest, Inc.*, 244 Conn. 732, 745 (1998) (citations omitted). Where the intent of the parties is clear and unambiguous from the language of the contract, the Court must give effect to that intent. *See id.* at 746.

Language in a contract is unambiguous if "it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." *Id.* (quotation marks omitted). As a general matter, parties are bound by unambiguous language in a written contract regardless of what they thought the contract promised when they signed it. *See Friezo v. Friezo*, 281 Conn. 166, 199 (2007). Finally, "if the intention of the parties is to be determined without reference to extrinsic evidence, interpretation of the contract is a question of law." *Levine*, 244 Conn. at 746.

The Tolling Agreement provides in relevant part:

> 1. St. Paul [formerly USF&G] hereby waives, and is estopped from asserting, any and all defenses or bars based upon any statute of limitations, or based on any theory premised on laches or delay or lapse of time, with respect to any such defense or bar which had not already accrued prior to the Effective Date.
>
> 2. The parties agree that the above waiver and applicable statute of limitations period will extend for a period of one year following the effective date (the "Termination Date"), and that St. Paul can maintain a defense or bar of laches of statute of limitations for any passage of time after the Termination Date.
>
> 3. In consideration of, conditioned upon and in reliance upon the foregoing, Paradigm agrees to withdraw its current Action without prejudice.
>
> 4. This Agreement shall not be construed . . . to affect any defense available to either party except as provided herein, which shall be construed to maintain the status quo between the Effective Date and the Termination Date.
>
> . . .
>
> 6. If any portion, provision or part of this Agreement is held, determined or adjudicated to be invalid, unenforceable, void or voidable for any reason whatsoever, each such portion, provision or part shall be severed from and shall not affect the validity or enforceability of the remaining portions.

Notice of Removal [doc. # 1-1] Ex. A at 22.

The Connecticut Supreme and lower courts refer to Connecticut General Statutes § 49-42(b) as a jurisdictional bar. *See Paradigm* Supreme, 293 Conn. at 572, 576 (describing

Connecticut General Statutes § 49-42(b) as setting "forth the time limitation within which suit must be commenced under the statute . . . [which] *is not to be treated as an ordinary statute of limitation, but as a jurisdictional requirement* establishing a condition precedent to maintaining an action under that section") (emphasis added); *Paradigm II*, 2008 WL 1914290, at *5 ("The specific time constraint here at issue, the one-year statute of limitations of Conn. Gen. Stat. §49-42b, *is no ordinary statute of limitations. It is a jurisdictional requirement* establishing a condition precedent to maintaining an action under the Little Miller Act . . . .") (emphasis added); *see also Am. Mason's Supply Co. v. F.W. Brown Co.*, 174 Conn. 219, 224 (1978) (same). Such jurisdictional requirements may not be waived. *See Fisher Skylights, Inc. v. CFC Constr. Ltd. P'ship*, 79 F.3d 9, 12 (2d Cir. 1996) (finding that Connecticut General Statutes § 49-42(b)'s "one-year 'time for suit' provision is a 'jurisdictional requirement.' . . . [that] cannot be avoided by waiver or estoppel" (citations omitted)).

Paradigm asks the Court to view the Tolling Agreement as an agreement between the parties wherein USF&G promises to never raise *any* types of defenses or bars premised on lapse of time, regardless of whether they are jurisdictional. This reading, however, is not true to the unambiguous text. USF&G did not promise not to raise jurisdictional bars; rather, it agreed that it waived, and was estopped from asserting, "any and all defenses or bars based on any statute of limitations, or based on any theory premised on laches or delay or lapse of time." Notice of Removal [doc. # 1-1] Ex. A at 22, *Paradigm* Supreme, 293 Conn. at 573 ("[T]he defendant agreed to waive any statute of limitations defenses that might arise after the effective date of the agreement."); *Paradigm II*, 2008 WL 1914290, at *1 ("USF&G waived any and all statute of limitations defenses which did not exist prior to [the effective date of the Tolling Agreement], and agreed that its waiver would remain in effect for a period of one year . . . ."). As Connecticut

General Statutes § 49-42(b) is a jurisdictional bar that may not be avoided through waiver or estoppel, and not an ordinary statute of limitations, this Court reads the Tolling Agreement as permitting USF&G's actions in *Paradigm II*.[2]

As the Connecticut Superior Court noted, there is some "unfairness of a ruling that a jurisdictional statute of limitations has run before this action was commenced, when the party urging that position has expressly agreed in the Tolling Agreement to waive and extend that statute of limitations." *Paradigm II*, 2008 WL 1914290, at *9. However, courts do not rewrite contracts for parties. "[I]n private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability." *Herbert S. Newman & Partners, P.C. v. CFC Constr. Ltd P'ship*, 236 Conn. 750, 759 (1996) (quotation marks omitted). Paradigm appears to be a knowledgeable and commercially sophisticated party, and it does not claim that there were improprieties in the contract formation process. "In the absence of any other countervailing policy reason, they are bound by the express terms of the [contract]." *Id.* at 760.

Furthermore, Connecticut General Statutes § 49-42(b) is a jurisdictional bar. To the extent the Tolling Agreement is meant to waive such bars, those portions are unenforceable. *See Fisher Skylights, Inc.*, 79 F.3d at 12. As a result, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 40] with regard to the breach of contract claim.

---

[2] The parties' dispute over who first raised the jurisdictional bar is therefore immaterial. *Compare* Defs.' Local Rule 56(a) Statement [doc. # 41] ¶¶ 19, 24; *with* Pl.'s Local Rule 56(a) Statement [doc. # 45] at 3 ¶ 19, 5 ¶ 24.

IV.

The second question before the Court is whether M&E was unjustly enriched in its settlement with the City. The elements of an unjust enrichment claim under Connecticut law are well established. *See Haynes Material Co. v. Scott*, No. CV095021833S, 2011 WL 1468350, at *4 (Conn. Super. Ct. Mar. 24, 2011). A plaintiff asserting an unjust enrichment claim must show: (1) that the defendant received a benefit; (2) that the defendant unjustly did not pay the plaintiff for the benefit; and (3) that the plaintiff suffered a detriment as a result of the defendant's failure to pay the plaintiff. *See Polverari v. Peatt*, 29 Conn. App. 191, 200-01 (1992). Because the doctrine of unjust enrichment is grounded in restitution, the measure of damages for an unjust enrichment claim is ordinarily based on the amount of benefit retained by the defendant, not the amount of loss suffered by the plaintiff. *See Schirmer v. Souza*, 126 Conn. App. 759, 765, 771 (2011). Unjust enrichment is not available when there is a legal remedy under an enforceable contract. *See Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006) ("Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." (quotation marks omitted)); *Alstom Power, Inc. v. Schwing America, Inc.*, No. 3:04cv1311 (JBA), 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) ("[W]here an express contract exists, restitution for unjust enrichment, a quasi contractual remedy, is unavailable.").

Assuming—without deciding—that the relevant statute of limitations have not run,[3] the Court finds that Paradigm's unjust enrichment claim cannot survive the Defendants' motion for summary judgment.

[3] Although there is no Connecticut appellate authority that squarely addresses the issue, other courts have found that the six-year Connecticut statute of limitations for breach of contract also applies to unjust enrichment claims. *See, e.g.*, *Gianetti v. Blue Cross and Blue Shield of Conn.*,

Paradigm once could have filed a breach of contract claim against P&K, although at present the parties both agree the statute of limitations on such a claim has long since run. Because Paradigm had a remedy in contract for the monies it was due for its work, it cannot now state a claim for unjust enrichment as a matter of law. *See Alstom Power, Inc.*, 2006 WL 2642412, at *5; *Gianetti v. Greater Bridgeport Individual Practice Assoc.*, Nos. (X02) CV4001686-87, (X02) CV4001689-95, (X02) CV4001697-702, (X02) CV4001705, (X02) CV4001707, (X02) CV4001755-56, (X02) CV4002219-21, 2005 WL 2078546, at *4 n.8 (Conn. Super. Ct. July 21, 2005) ("Although the statute of limitations bars some of the plaintiff's breach of contract actions against [the defendant], that fact is a matter entirely within the plaintiff's control and does not negate the general availability of a remedy under contract.").

Furthermore, even if Paradigm did not once have a remedy in contract, it is unclear whether a reasonable jury could find that Paradigm satisfies the first requirement for an unjust enrichment claim in the absence of evidence that Paradigm's work benefited M&E. *See Polverari*, 29 Conn. App. at 200-01. The City-M&E Settlement was for a lump sum, and Paradigm has not taken depositions on how the lump sum was calculated. On the record before the Court, Paradigm has not clarified whether, if at all, M&E benefitted from Paradigm's work on the Landfill Cap. Paradigm's work may have been an important factor in the City-M&E Settlement, or it may not have figured into the calculations at all. *See Menard v. Gentile*, 7 Conn. App. 211, 215-16 (1986) (finding that the defendants were benefited by certain property improvements, but because it was unclear how much of the benefit came from plaintiffs' or

---

*Inc.*, No. 3:07cv01561 (PCD), 2008 WL 1994895, at *8 n.4 (D. Conn. May 6, 2008). It is worth noting that ""[t]he statute of limitations for a claim of unjust enrichment begins to run upon the occurrence of the wrongful act giving rise to a duty of restitution." *Golden Pacific Bancorp. v. F.D.I.C.*, 273 F.3d 509, 520 (2d Cir. 2001) (quotation marks omitted) (applying New York law).

others' actions, the plaintiffs had not met their burden of demonstrating that their actions benefited the defendants).

Finally, even had M&E relied on Paradigm's work in its settlement negotiations with the City, it is not clear that Paradigm's work unjustly enriched M&E. The Connecticut Supreme Court has not addressed the question of whether a general contractor may be unjustly enriched by the actions of a sub-subcontractor.[4] It has found that an owner may be unjustly enriched by the actions of a subcontractor, but that a subcontractor could not bring a claim of unjust enrichment against an owner if, in the absence of fraud, the owner had paid the intermediary general contractor for the subcontractor's work or goods.[5] *See Providence Elec. Co. v. Sutton Place, Inc.*, 161 Conn. 242, 246-47 (1971); *Garwood & Sons Constr. Co. v. Centos Assocs. Ltd. P'ship*, 8 Conn. App. 185 (1986); *see also Ayotte Bros. Const. Co. v. Finney*, 42 Conn. App. 578, 581-82 (1996) (finding that a subcontractor correctly brought a claim of unjust enrichment against the owner of a property when that owner had not paid for the subcontractor's work).

As Paradigm had a remedy in contract, barring its unjust enrichment claim, there is no need to extrapolate as to whether a general contractor may be unjustly enriched by the actions of a sub-subcontractor under Connecticut law. Nonetheless, it is worth noting that there is nothing in the record to suggest that M&E did not pay P&K for the completion of the M&E-P&K Subcontract. *See Brian's Floor Covering Supplies, LLC v. Spring Meadow Elderly Apartments*, No. CV000375810S, 2006 WL 894929, at *7 (Conn. Super. Ct. Mar. 22, 2006) (finding that a

---

[4] At least one Connecticut Superior Court has found that a subcontractor's work did not constitute a benefit to the general contractor, but rather to the owner, and therefore claims of unjust enrichment could not be made by a subcontractor against the general contractor. *See Suntech of Conn., Inc. v. Lawrence Brunoli, Inc.*, No. HHDCV09-5030131S, 2011 WL 2150585, at *7 (Conn. Super. Ct. May 4, 2011).

[5] As Paradigm has not raised the claim, the Court does not address whether Paradigm could bring a suit of unjust enrichment against the City, the owner of the improved property.

general contractor does not unjustly benefit from the work of a sub-subcontractor when the general contractor pays the intermediary subcontractor for the work).

Despite the fact that, in earlier litigation, USF&G conceded without discussing that Paradigm's allegations support a claim of unjust enrichment against M&E, *see* Defs.' Local Rule 56(a) Statement [doc. # 41-10] Ex. 2H at 19 n.7, Paradigm cannot bring such a claim. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 40] with regard to the unjust enrichment claim.[6]

V.

For the reasons discussed above, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 40]. **The Clerk is directed to enter judgment for Defendants and to close this file.**

**IT IS SO ORDERED.**

/s/ Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **September 16, 2011.**

[6] The parties' disputes over whether Paradigm subcontracted all or some of its work to Barrett, whether Paradigm did work for which it claims it was unpaid, and precisely when payment for this alleged work was due are therefore immaterial. *Compare* Defs.' Local Rule 56(a) Statement [doc. # 41] ¶¶ 8, 11, 16; *with* Pl.'s Local Rule 56(a) Statement [doc. # 45] at 1 ¶ 8, 2 ¶ 11, 3 ¶ 16.